1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10

11    ELAINE M. MONLUX,                          CASE NO. 2:24-cv-00912-LK

               Plaintiff,                        ORDER GRANTING MOTION TO
12                                               REMAND
            v.

13    3M COMPANY et al.,

14             Defendants.

15

16         This matter comes before the Court on Plaintiff Elaine Monlux's Motion to Remand. Dkt.

17    No. 125. For the reasons discussed below, the Court grants Monlux's motion and remands this

18    case.[1]

19                              I.    BACKGROUND

20    A.    State Court Procedural History

21         Monlux initiated this action in King County Superior Court on or about November 29,

22    2023, as the surviving spouse and executor for the estate of Richard Monlux. Dkt. No. 1 at 2; Dkt.

23    ─────────────────────

24    [1] Because the Court can decide this matter based on the parties' submissions, it denies their requests for oral argument.
      *See id.* at 1; Dkt. No. 155-1 at 1.

No. 1-2. She served her initial complaint on Defendant Foster Wheeler Energy Corporation ("Foster Wheeler") on December 14, 2023. Dkt. No. 1 at 2.

Monlux alleges that Mr. Monlux, who developed mesothelioma and passed away on August 7, 2023, died as a result of his exposure to Defendants' activities and asbestos-containing products. Dkt. No. 1-2 at 6–7. She avers that Foster Wheeler used asbestos or asbestos-containing materials in its boilers and cooling towers, and was "engaged in the installation and removal of asbestos-containing materials" in its boilers, digesters, and other pieces of equipment "at numerous jobsites throughout the Pacific Northwest[.]" *Id.* at 29. She contends that Mr. Monlux was exposed to asbestos at three locations in Washington including:

- Lockheed Shipbuilding Company, f/k/a Puget Sound Bridge & Dredging Co., in Seattle, Washington;

- Hanford Nuclear Facility, Benton County, Washington; and

- Longview Fibre Paper Mill, Longview, Washington.

*Id.* at 7. Monlux's amended complaint repeated the allegations that Mr. Monlux was exposed to asbestos at the same three sites in Washington and included generally the same allegations against Foster Wheeler. Dkt. No. 1-3 at 7, 24, 29.

**B.    Discovery Requests and Responses**

Discovery has provided some additional information regarding Monlux's allegations. On January 29, 2024, Monlux responded to Foster Wheeler's interrogatories, including one that asked her to identify all of Mr. Monlux's employers and the name of each ship upon which he was allegedly exposed to asbestos. Dkt. No. 155-1 at 2. In response, Monlux stated that Mr. Monlux worked at Lockheed Shipbuilding in "Puget Sound Seattle" in 1961–62 as a pipefitter helper. Dkt. No. 148 at 19. She did not identify any ships he worked on or state whether the claimed exposure

occurred aboard a vessel or at a land-based site. Dkt. No. 155-1 at 2; Dkt. No. 148 at 19, 24, 27.[2]

On May 29, 2024, Monlux served Requests for Production on Foster Wheeler. Dkt. No. 1 at 4. Among other things, those requests asked Foster Wheeler to produce "all documents reflecting the presence of Foster Wheeler equipment at Lockheed Shipbuilding in Puget Sound between 1960 and 1962," documents reflecting contracts or agreements regarding Lockheed Shipbuilding, and any documents containing the words "Puget Sound" or "Lockheed Shipbuilding" that were "written or received between 1960 and 1962." Dkt. No. 1 at 4; Dkt. No. 148 at 88–89. According to Foster Wheeler, these discovery requests were "the first writing indicating that Plaintiff might be making an allegation of exposure to asbestos aboard a Navy ship." Dkt. No. 1 at 4–5. Thus, the next day, Foster Wheeler's counsel sent an email to Plaintiff's counsel asking if Monlux was requesting "records related to Puget Sound Naval Shipyard" or "for Lockheed related to Naval vessels[.]" Dkt. No. 1 at 5. Counsel exchanged emails, and Plaintiff's counsel stated that she had "no information whether any ship that Richard Monlux may have worked on while employed by Lockheed was a Navy ship," he could "have worked entirely on civilian ships being built by Lockheed between 1961 and 1962," and she was "seeking records related to the provision of [Foster Wheeler] equipment to Lockheed Shipbuilding located at Puget Sound (as opposed to any other shipyard where Lockheed may have operated) during the years at issue." Dkt. No. 1 at 6; Dkt. No. 1-6 at 146–48.

Following counsel's emails, Monlux served Amended Requests for Production of Documents on Foster Wheeler on June 5, 2024. Dkt. No. 1 at 6. The amended requests clarified that Monlux "was not seeking records related to Puget Sound Naval Shipyard," but "she did not

---

[2] Monlux contended in her March and April 2024 responses to discovery requests from other Defendants that Mr. Monlux was exposed at Puget Sound Naval Shipyard, "a location which, unlike Lockheed Shipyards, only serviced Navy vessels." Dkt. No. 155-1 at 3.

revise the discovery requests related to Lockheed Shipyard so as to remove any request for government- or Navy-related records." *Id.* Counsel discussed the requests by phone, and Foster Wheeler's counsel asked "whether Plaintiff was alleging exposure to asbestos related to Foster Wheeler equipment aboard Navy ships." *Id.* at 7. Monlux's counsel responded that she was "not in a position to disclaim exposure on a government vessel at this stage." *Id.*; *see also* Dkt. No. 1-6 at 173. Foster Wheeler subsequently "confirmed the presence of Foster Wheeler equipment on Navy ships that were present at Lockheed during the period of 1961-1962, pursuant to a federal officer's directions and under color of federal office" and avers that during that time period, "the Navy required the use of asbestos-containing materials aboard its ships." Dkt. No. 1 at 7.

## C.    Foster Wheeler's Removal and Monlux's Motion to Remand

Foster Wheeler removed the case to this Court on June 24, 2024 pursuant to 28 U.S.C. §§ 1331, 1442, and 1446, asserting a government contractor defense. Dkt. No. 1 at 1, 12. It stated in its removal notice:

> The discovery requests together with the email exchange between counsel for Plaintiff and Foster Wheeler put Foster Wheeler on notice that this case was removable under 28 U.S.C. § 1446(b)(3) as it was the first "other paper" alerting Foster Wheeler that Plaintiff was claiming Mr. Monlux was exposed to asbestos attributable to Foster Wheeler on Navy or government ships at Lockheed Shipyard. Because Foster Wheeler supplied equipment as specified by the United States government for use aboard government vessels that were built, repaired, or serviced at Lockheed Shipyard, removal is appropriate.

*Id.* at 7–8. Stated another way, Foster Wheeler's position was that (1) Monlux is alleging that Mr. Monlux was exposed to asbestos at Lockheed Shipbuilding, (2) Foster Wheeler "manufactured boilers and associated equipment for use on Navy ships and at Navy installations pursuant to contracts and specifications executed by the United States Navy," and (3) Foster Wheeler equipment was present on Navy ships at Lockheed from 1961-1962, "pursuant to a federal officer's directions and under color of federal office." *Id.* It was thus removing because "in the manufacture

and sale of Foster Wheeler equipment for the United States Navy, including all aspects of warnings associated with that equipment[,] Foster Wheeler was acting under an officer or with the agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1)." *Id.* at 8.

As to the timing of its removal, Foster Wheeler averred that neither the original complaint nor the amended complaint alleged that Mr. Monlux "was exposed to asbestos while working with or around equipment that was manufactured by Foster Wheeler acting at the direction of and under an officer or agency of the United States" or that he was "exposed to asbestos from Foster Wheeler Equipment aboard any government or Navy vessel, ship, or boat." *Id.* at 2. It was Monlux's counsel's "refusal to affirmatively disclaim exposure to asbestos from equipment manufactured by Foster Wheeler aboard government and/or Navy vessels" that made it "clear that at least part of Plaintiff's claim of injury is a result of alleged exposure to asbestos from Foster Wheeler manufactured equipment aboard Navy and/or government vessels at Lockheed Shipyard." *Id.* at 7.

On July 24, 2024, Monlux filed a timely motion to remand the case to King County Superior Court pursuant to 28 U.S.C. § 1447(c). Dkt. No. 125. Monlux argues that this case should be remanded because: "(1) the removal is untimely; (2) [Foster Wheeler] has failed to demonstrate a colorable federal defense; and (3) removal was improper because this action does not involve any current federal officer." *Id.* at 1. Foster Wheeler opposes the motion. Dkt. No. 155-1.

On September 27, 2024, after briefing on the motion was complete, Foster Wheeler filed a notice of supplemental authority, attaching new requests for production from Plaintiff dated September 24, 2024. Dkt. Nos. 170, 170-1. These requests for production asked Foster Wheeler to produce "[a]ll documents reflecting Defendant's employees, equipment or materials on the PUGET SOUND VESSELS prior to 1963," and defined PUGET SOUND VESSELS to include "USS Gridley DLG 2, USS Goldsborough DDG 20, USS Cochrane DDG 21, [and] USS Benjamin Stoddert DDG 22[.]" Dkt. No. 170-1 at 6. The Court issued an order noting that the requests "could

be interpreted to suggest that Monlux believes that Foster Wheeler exposed Richard Monlux to asbestos aboard military vessels." Dkt. No. 172 at 1–2. Consequently, the Court "order[ed] the parties to meet and confer regarding the import of the new discovery requests, including whether Monlux is alleging that Mr. Monlux was exposed to asbestos by Foster Wheeler equipment aboard a military vessel, and whether the causal connection element of the government contractor defense is met" in light of Ninth Circuit authority. *Id.* at 2. Monlux responded and stated that her position remains unchanged: "Mr. Monlux was exposed to asbestos-containing Foster Wheeler equipment while working at Lockheed Shipbuilding." Dkt. No. 173 at 2. She notes that her September 2024 discovery requests "reflect information, supplied by Foster Wheeler, that Navy ships were among those at Lockheed Shipbuilding when Decedent Richard Monlux worked there as a pipefitter in 1961-62." *Id.* But in her view, those requests are irrelevant because the propriety of removal must be analyzed based on pleadings filed at the time of removal, and "[d]iscovery requests asking about Foster Wheeler's supply to certain Navy ships are not evidence." *Id.* at 4–5. Foster Wheeler responded and averred that Monlux's September 2024 discovery requests "expressly confirm[] that she is in fact claiming that Mr. Monlux was exposed to asbestos attributable to Foster Wheeler aboard military vessels." Dkt. No. 174 at 1.

## II.    DISCUSSION

### A.    Legal Standard

A civil action initiated in state court "against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to the district court where the action is pending. 28 U.S.C. § 1442(a)(1). Under the federal officer removal statute, a defendant may remove an action "despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on

1   federal law." *DeFiore v. SOC LLC*, 85 F.4th 546, 554 (9th Cir. 2023) (quoting *Jefferson Cnty. v.*

2   *Acker*, 527 U.S. 423, 431 (1999)).

3         A party removing an action under Section 1442 must demonstrate that "(a) it is a 'person'

4   within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to

5   a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal

6   defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting

7   *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) and *Mesa v. California*, 489 U.S. 121, 124–25,

8   131–35 (1989)). Pursuant to the government contractor defense, liability cannot be imposed on

9   military contractors for design defects in military equipment when "(1) the United States approved

10  reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the

11  supplier warned the United States about the dangers in the use of the equipment that were known

12  to the supplier but not to the United States." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512

13  (1988). The elements are similar for failure to warn claims, requiring the defendant to show that

14  "(1) the [military] exercised its discretion and approved certain warnings for [the defendant's]

15  products, (2) [the defendant] provided the warnings required by the [military], and (3) [the

16  defendant] warned the [military] about any asbestos hazards that were known to [the defendant]

17  but not to the [military]." *Leite v. Crane Co.*, 749 F.3d 1117, 1123 (9th Cir. 2014). Unlike removal

18  under Section 1441, where the statute is to be "strictly construed, and any doubts as to the right of

19  removal must be resolved in favor of remanding to state court," removal under Section 1442 is not

20  interpreted "so strictly"; instead, courts "interpret section 1442 broadly in favor of removal."

21  *Durham*, 445 F.3d at 1252; *accord DeFiore*, 85 F.4th 546, 553–54.

22        Courts evaluate remand motions challenging removal jurisdiction under the same standards

23  as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter

24  jurisdiction. *DeFiore*, 85 F.4th at 552. Where, as here, "the moving party does not contest the

removal notice's factual allegations but instead asserts that those allegations are facially insufficient to invoke federal jurisdiction, [courts] accept the notice's factual allegations as true and draw all reasonable inferences in favor of the remover." *Id.* In contrast, when the plaintiff's motion raises a factual challenge, the remover "must support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Id.* at 552–53 (cleaned up).

Procedurally, as with Section 1441, Section 1446(b) provides two 30-day windows for removal. First, if the basis for removal is clear from the face of the complaint, the statute mandates that the notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1); *see also Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090 (9th Cir. 2021). Second, "if the case stated by the initial pleading is not removable," such notice "may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Durham*, 445 F.3d at 1250; *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

Courts in the Ninth Circuit do not "charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham*, 445 F.3d at 1251; *see also Harris*, 425 F.3d at 694 ("[T]he notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."). "If no ground for removal is evident in [the initial] pleading, the case is 'not removable' at that stage." *Harris*, 425 F.3d at 694 (quoting 28 U.S.C. § 1446(b)(3)). And for "an amended pleading, motion, order, or other paper" to trigger

the second 30-day removal period under Section 1446(b)(3), it "must make a ground for removal unequivocally clear and certain[.]" *Dietrich*, 14 F.4th at 1095.

**B.      Foster Wheeler's Removal Was Not Too Late**

Monlux contends that Foster Wheeler's removal was untimely because both versions of her complaint and her discovery requests "*all identified Lockheed Shipbuilding in Puget Sound*" as a place Mr. Monlux was exposed to asbestos. Dkt. No. 125 at 3–4. Thus, she argues, if Foster Wheeler had sufficient information from Monlux's May 29, 2024 discovery requests to conclude that removal was warranted, it necessarily follows that it had sufficient information when the original complaint was filed in November 2023. *Id.* at 4. "That being the case, the failure to remove the action within 30 days of the filing the original Complaint dooms Foster Wheeler's removal now." *Id.* Foster Wheeler responds that neither the complaint nor the amended complaint alleged that Mr. Monlux worked aboard any Navy ship or was exposed to Foster Wheeler's products manufactured for, and at the direction of, the Navy. Dkt. No. 155-1 at 2. It avers that "[w]hile 'Lockheed Shipyard'—a private shipyard—is identified as a place where Mr. Monlux worked as a pipefitter's helper and claimed to have been exposed to asbestos, there is no indication of whether he worked in the pipefitter's shop (land-based) or aboard ships." *Id.* at 7. "Because the Complaint and Amended Complaint did not [reveal] a ground for removal, § 1446(b)(1) does not apply." *Id.* Foster Wheeler argues that it timely removed under the second path set forth in Section 1446(b)(3) within 30 days of receiving Monlux's May 29, 2024 discovery requests. *Id.* at 7–8.

The Court agrees that Monlux's complaint set forth no grounds for removal. *Dietrich*, 14 F.4th at 1093–94. While it identified Lockheed Shipyard as a place of exposure, Dkt. No. 1-2 at 7, it did not allege that Mr. Monlux worked on Navy vessels there or any other basis for removal. Thus, grounds for removal were not "revealed affirmatively in the initial pleading[.]" *Harris*, 425 F.3d at 695. Furthermore, Foster Wheeler had no "duty to make further inquiry" in response to the

complaint, *Id.* at 694, so Monlux's argument that Foster Wheeler should have investigated sooner is unavailing, Dkt. No. 125 at 5. Thus, the complaint did not trigger the start of the removal period under Section 1446(b)(1).

As for the second path to removal under Section 1446(b)(3), Monlux has not identified a document that "ma[de] a ground for removal unequivocally clear and certain." *Dietrich*, 14 F.4th at 1095. In fact, she argues that "Foster Wheeler has still failed to establish that any document relied on in its motion was sufficient to trigger a removal at all." Dkt. No. 152 at 2. In her reply, Monlux argues that the discovery responses she served on other Defendants in March and April 2024 identified Puget Sound Naval Shipyard as one of Mr. Monlux's work sites, so Foster Wheeler should have removed within 30 days of service of those responses. *Id.* In general, new arguments and evidence presented for the first time in a party's reply are waived. *See, e.g.*, *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006). Here, the late argument, even if considered, does not help Monlux. The March and April 2024 discovery responses alleged that Mr. Monlux worked at Puget Sound Naval Shipyard at some point, and while there he was exposed to asbestos by *other* Defendants' products. Dkt. No. 148 at 53, 62, 68, 76–77. Thus, those responses did not make Foster Wheeler's grounds for removal unequivocally clear and certain, nor was it required to investigate based on Monlux's discovery responses. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("[E]ven if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."). In sum, Foster Wheeler's removal was not late.

**C.    Foster Wheeler's Removal Was Premature**

Monlux argues that Foster Wheeler's removal was premature because it "has still failed to establish that any document relied on in its motion was sufficient to trigger a removal at all." Dkt.

No. 152 at 2. Monlux further contends that although Foster Wheeler relies on the government contractor defense to support removal, it has not shown that the defense is "colorable." Dkt. No. 125 at 6 (quoting *Mesa*, 489 U.S. 129).

Foster Wheeler responds that its removal was warranted after (1) Monlux requested records for all Foster Wheeler equipment at Lockheed Shipyard, (2) her counsel stated that the request included records related to Navy ships, and (3) Foster Wheeler's inquiry "informed Foster Wheeler that its Navy equipment was present on vessels at Lockheed during the relevant time period." Dkt. No. 155-1 at 3. It notes that it is a "person" within the meaning of Section 1442(a)(1)—which Monlux does not dispute—and that it was "acting under" a federal officer by "assisting the United States Navy in carrying out its military duties by supplying steam generating equipment for Navy ships pursuant to strict Navy oversight." *Id.* at 12–13. It further contends that a causal connection exists because "during the time that Mr. Monlux was employed at Lockheed Shipyard, Foster Wheeler manufactured boilers under contracts with the Navy for use on its vessels." *Id.* at 13. It argues that it has therefore established a colorable government contractor defense to both Monlux's design defect and failure to warn claims. *Id.* at 13–15.

Because Monlux is making a facial challenge to removal jurisdiction, the Court "accept[s] the [removal] notice's jurisdictional allegations as true and draw[s] all reasonable inferences in favor of" Foster Wheeler. *DeFiore*, 85 F.4th at 553. As for the first element, the Court finds that Foster Wheeler is a "person" under Section 1442(a)(1). *See, e.g.*, *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (explaining that corporations are "person[s]" for purposes of Section 1442(a)(1)).

Turning to the second element of the defense, Foster Wheeler must establish that there is a causal nexus between its actions and Monlux's claims. *DeFiore*, 85 F.4th at 554. To do so, it must establish that (1) it was "acting under a federal officer in performing some act under color of

federal office," and (2) such action "is causally connected with [Monlux's] claims against [Foster Wheeler]." *Id.* (cleaned up). To show a causal connection, removing defendants "need show only that the challenged acts occurred *because of* what they were asked to do by the Government." *Goncalves*, 865 F.3d at 1245 (quotation marks and citation omitted). That is, they must show that "the actions they took which gave rise to the [plaintiff's] claims resulted from their work for [the Department of Defense]." *DeFiore*, 85 F.4th at 557. The "hurdle erected by the causal-connection requirement is quite low." *Goncalves*, 865 F.3d at 1244 (cleaned up).

As relevant to the first part of the causal nexus test, Foster Wheeler's notice of removal alleges that "[i]n all relevant aspects of their design, manufacture, and supply of boiler equipment to the Navy for use aboard Navy vessels (including any warnings or other written materials to be furnished therewith), Foster Wheeler was acting under the detailed direction and control of one or more federal officers." Dkt. No. 1 at 10. Foster Wheeler also contends that the military "expressly dictated the use of any asbestos-containing gaskets and/or asbestos-containing thermal insulation materials used with all Navy boilers." *Id.*

As relevant to the second part of the causal nexus test, Foster Wheeler asserts that the causal nexus requirement is satisfied "if a defendant has been sued for asbestos-related injuries purportedly arising from or relating to equipment that it manufactured and supplied to the Navy under the Navy's detailed direction and control[.]" Dkt. No. 1 at 11–12. The problem with that argument is that at this point, there is no evidence or allegation that Monlux has sued Foster Wheeler for "asbestos-related injuries purportedly arising from or relating to equipment that it manufactured and supplied to the Navy[.]" *Id.* Neither version of the complaint contains such allegations. Dkt. Nos. 1-2, 1-3. Both versions of the complaint contain only general allegations against Foster Wheeler without identifying what specific product allegedly injured Mr. Monlux at Lockheed Shipyard. Foster Wheeler notes that both versions of the complaint reference Foster

1   Wheeler specifically only twice. Paragraph 40 "makes a passing referenced to 'Foster Wheeler

2   Cooling Towers' in connection with ECODYNE CORPORATION, but there is no allegation that

3   those 'Cooling Towers' are associated any Navy ships at Lockheed (because, of course, they are

4   not)." Dkt. No. 1 at 3; *see also* Dkt. No. 1-2 at 21; Dkt. No. 1-3 at 24. Paragraph 48 references

5   Foster Wheeler too, but lists numerous products without identifying a military association. Dkt.

6   No. 1-2 at 25–26; Dkt. No. 1-3 at 29. Thus, while Monlux alleges that Foster Wheeler exposed

7   Mr. Monlux to asbestos (the challenged act), she does not allege that it did so in connection with

8   any military activity.

9       Foster Wheeler's response to the motion to remand also attempts to meet the causal

10  connection requirement by stating that "[t]he record shows that during the time that Mr. Monlux

11  was employed at Lockheed Shipyard, Foster Wheeler manufactured boilers under contracts with

12  the Navy for use on its vessels." Dkt. No. 155-1 at 13. It also states in its supplemental brief that

13  "[t]he challenged acts here, use of defective products and failure to warn in its manufacture and

14  supply of military boilers, are acts which Foster Wheeler contends occurred under the direction of

15  the U.S. Government pursuant to valid contracts." Dkt. No. 174 at 3.[3] Although the amended

16  complaint alleges that Foster Wheeler, among other things, supplied asbestos containing boilers,

17  Dkt. No. 1-3 at 29, it does not allege that the company supplied them to the military. And neither

18  party asserts that such *military* boilers exposed Mr. Monlux to asbestos, or that Mr. Monlux ever

19  worked on a Navy ship at Lockheed Shipyard. Foster Wheeler's notice of removal states that its

20  equipment was present on Navy ships at Lockheed during the relevant time, Dkt. No. 1 at 7, but

21  the mere presence of both Mr. Monlux and Foster Wheeler's Navy-supplied equipment at the

22

23  ---

    [3] Because Monlux is making a facial challenge to removal, the Court considers whether the allegations in the removal notice are sufficient to invoke federal jurisdiction, drawing all reasonable inferences in Foster Wheeler's favor. *DeFiore*, 85 F.4th at 552. The later filed discovery requests are therefore irrelevant, but as set forth herein, considering them does not change the result.

24

shipyard at the same time is not enough to allege a causal connection. *See, e.g.*, *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992) (explaining that the military contractor defense "immuniz[es] contractors only with respect to the military equipment they produce for the United States"); *Durham*, 445 F.3d at 1251 (explaining that because defendant, "like other federal military contractors, performs some activities on military bases that are protected by federal contractor immunity, and others that are not," there was insufficient information to support the federal contractor defense before plaintiff revealed which military aircraft he worked on); *cf. Coury v. Air & Liquid Sys. Corp.*, Case No. 3:17–1240–SI, 2018 WL 702685, at * 6 (D. Or. Feb. 2, 2018) (finding the case removable when plaintiff's counsel's email identified "the U.S. Navy vessels on which [plaintiff wa]s alleged to have worked, the equipment belonging to each Defendant found aboard those ships, and the work that [plaintiff] did on those ships"); *Bouchard v. CBS Corp.*, No. 11-00458, 2012 WL 1344388, at *7 (E.D. Pa. Apr. 17, 2012) (finding that until a deposition discovery revealed that plaintiff worked on military ships, "Defendant could not assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense"). The Court cannot simply assume that Mr. Monlux worked on Navy ships because the shipyard serviced both civilian and military vessels. Dkt. No. 155-1 at 3; *Bouchard*, 2012 WL 1344388, at *7 (noting that Lockheed Shipyard "constructed and repaired various vessels for both the U.S. Government and other non-federal entities").[4] Furthermore, the amended complaint alleges that Mr. Monlux worked as a pipefitter helper at Lockheed, and Foster Wheeler acknowledges that pipefitter helpers worked on land and on vessels. Dkt. No. 155-1 at 7 (Foster Wheeler arguing that although Monlux's complaints identify "'Lockheed Shipyard'—a private shipyard"—as "a place where Mr. Monlux worked as a pipefitter's helper and claimed to have

---

[4] The Court takes judicial notice of documents filed in *Bouchard*. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

been exposed to asbestos, there is no indication of whether he worked in the pipefitter's shop (land-based) or aboard ships."). As a result, Mr. Monlux could have worked on civilian vessels, on military vessels, or entirely on land. No party has supplied any evidence or made any allegations linking Mr. Monlux's asbestos exposure to work on a military vessel or with military equipment at Lockheed Shipyard.

Specifically, Foster Wheeler does not assert that Mr. Monlux worked on a military vessel, nor does it allege that its asbestos-containing materials at Lockheed were only on Navy ships, such that it could only have exposed Mr. Monlux on a Navy ship (as opposed to on a civilian ship, or on land). In other words, Foster Wheeler's theory of the case at this point is that *if* Mr. Monlux worked on a Navy vessel *and* that vessel included Foster Wheeler's asbestos-containing equipment, then that equipment was required to comport with military specifications. Dkt. No. 1 at 7–8. Notably, none of the cases Foster Wheeler cites involved such a hypothetical situation.[5]

Foster Wheeler also relies on Monlux's counsel's "refusal to affirmatively disclaim exposure to asbestos from equipment manufactured by Foster Wheeler aboard government and/or Navy vessels." Dkt. No. 1 at 7. However, "[l]ike plaintiffs pleading subject-matter jurisdiction

---

[5] Dkt. No. 1 at 9 (citing *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 772–73 (E.D. Pa. 2010) (injured person worked "as an outside machinist in close proximity to asbestos-containing machinery and insulation aboard the U.S.S. Kitty Hawk"); *Hurley v. CBS Corp.*, 648 F. App'x 299, 304 (4th Cir. 2016) (plaintiffs alleged that defendant caused injuries related to its "production and installation of turbines and generators, done pursuant to contracts with the Navy"); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1178 (7th Cir. 2012) (alleging that defendant "included asbestos in the turbines it supplied to the United States Navy, and Ruppel was allegedly exposed to it during his Naval service and later when he worked on an aircraft carrier as a civilian"); *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 988 (C.D. Ill. 2011) (alleging exposure to asbestos aboard Navy vessels); *Najolia v. Northrop Grumman Ship Sys.*, 883 F. Supp. 2d 646, 648–49 (E.D. La. 2012) (same); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1316 (N.D. Ala. 2010) (same); *Machnik v. Buffalo Pumps*, 506 F. Supp. 2d 99, 101 (D. Conn. 2007) (same); *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 205–06 (S.D.N.Y. 2005) (same); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 698 (S.D. Tex. 2002) (same); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322, 1327 (E.D. La. 1994) (alleging that the injured person worked on marine turbines constructed for the Navy); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099, 1101 (D. Md. 1993) (same); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (plaintiffs claimed exposure to asbestos while on board Navy submarines constructed by defendant)); *see also* Dkt. No. 155-1 at 17–18 (citing *Sequira v. 3M Co.*, 621 F. App'x 458, 459 (9th Cir. 2015) (plaintiff alleged that the United States required defendant to use asbestos-containing equipment in a military aircraft that "released asbestos particles into the air where he worked")).

under Rule 8(a)(1), a defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite*, 749 F.3d at 1122. Here, a key allegation is missing regarding whether Mr. Monlux ever worked aboard a Navy ship (or any similar link between Foster Wheeler's military-supplied equipment and his alleged exposure). Counsel's declination to disclaim a legal theory at this stage of the case does not supply a missing allegation. Accordingly, Foster Wheeler has not met its burden of showing that removal was appropriate.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. Dkt. No. 125. The Court further ORDERS that:

1.     Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2.     The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County Washington;

3.     The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

4.     The Clerk of the Court shall CLOSE this case.


Dated this 3rd day of December, 2024.


Lauren King
United States District Judge

ORDER GRANTING MOTION TO REMAND - 16